IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

VAUGHN T. SIZEMORE,

    Plaintiff,

v.          CIVIL ACTION NO. 2:17-cv-00789

NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY, et al.,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Northwestern Mutual Life Insurance Company's ("Northwestern") Motion to Dismiss (ECF No. 7). For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

*I.  BACKGROUND*

On January 23, 2017, Plaintiff Vaughn T. Sizemore ("Plaintiff") filed this lawsuit against Northwestern and ten John Doe defendants. The eight-count Complaint alleges a claim under the Employee Retirement Income Security Act ("ERISA") (Count I), common law bad faith (Count II), breach of reasonable expectations (Count III), estoppel (Count IV), waiver (Count V), two claims under the West Virginia Unfair Trade Practices Act ("WVUTPA") (Counts VI and VII), and a claim under the West Virginia Consumer Credit and Protection Act ("WVCCPA").

Plaintiff was employed as an attorney with the law firm of Bailey and Wyant, PLLC, until January 2015, where he participated in an employee welfare benefit plan (the "Plan"). (ECF No.

1 ¶¶ 1, 273.) Northwestern is the insurer and claims administrator for the Plan. (ECF No. 1 ¶¶ 2, 8.) According to the Complaint, on February 2, 2004, Plaintiff was diagnosed with Wegener's Granulomatosis, which is now known as Granulomatosis with polyangiitis ("GPA"). (ECF No. 1 ¶ 10.) Plaintiff has suffered a variety of symptoms from this condition, including loss of circulation to his fingers, peripheral neuropathy, and kidney failure. (ECF No. 1 ¶ 13.) Since his diagnosis, Plaintiff has undergone seventy surgeries, including two kidney transplants. (ECF No. 1 ¶ 14.) Due to limitations from these conditions and the various related surgeries, Plaintiff's ability to work has fluctuated greatly since his diagnosis, and he has applied for and been awarded disability benefits for several intervals during that time. (ECF No. 1 ¶¶ 15-37.)

After a period without receiving benefits, Plaintiff again applied for benefits on or about January 18, 2012. (ECF No. 1 ¶ 29.) Northwestern approved this claim on April 23, 2012, on the grounds that Plaintiff qualified for benefits under the Plan's "Own Occupation" definition of disability, though the approval also acknowledged that Plaintiff could qualify for the Plan's "Partial Disability" definition of disability. (ECF No. 1 ¶¶ 32-34.) On June 22, 2015, Northwestern sent Plaintiff a letter informing him that he would no longer receive benefits as he no longer met the policy's definition of disability. (ECF No. 1 ¶ 37.) Following receipt of that notice, on July 1, 2015, Plaintiff requested an internal appeal of that decision. (ECF No. 1 ¶ 279.) On December 15, 2015, Northwestern sent Plaintiff a letter affirming its initial decision that Plaintiff was no longer disabled, under either the Own Occupation or the Partial Disability definition of disability. (ECF No. 1 ¶¶ 281-82.) In its decision on this review, Northwestern did not consider the statement of Plaintiff's treating Nephrologist, Dr. Rahman. (ECF No. 1 ¶ 296.) On the grounds that this decision was the first time Northwestern had addressed his alleged

2

disability under the Partial Disability definition, on January 21, 2016, Plaintiff requested a review of the determination that his condition did not meet that definition. (ECF No. 1 ¶¶ 281-85.) Northwestern informed Plaintiff on February 12, 2016, that it would not review this determination because Plaintiff had already exhausted his appeals process. (ECF No. 1 ¶¶ 241-43.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Allegations "must be simple, concise, and direct" and "[n]o technical form is required." Fed. R. Civ. P. 8(d)(1). A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a civil complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged." *Id.* A motion to dismiss will be granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts

in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

### III. DISCUSSION

ERISA § 514 "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . ." 29 U.S.C. § 1144(a). This provision broadly preempts state laws that conflict with ERISA. *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 186–87 (4th Cir. 2002) ("Under ordinary conflict preemption, state laws that conflict with federal laws are preempted, and preemption is asserted as a 'federal defense to the plaintiff's suit.'" (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987))). ERISA also implicates complete preemption, where "Congress 'so completely preempts a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *Id.* at 187 (quoting *Taylor*, 481 U.S. at 63–64). ERISA completely preempts state law claims that "fall within the scope of an ERISA provision that [a plaintiff] can enforce via § 502(a)." *Sonoco Products Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 372 (4th Cir. 2003) (citing *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1487 (7th Cir. 1996)). In such circumstances, the plaintiff's state law claims are converted into federal claims arising under ERISA. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) ("[T]he ERISA civil enforcement mechanism is one of those provisions with such "extraordinary pre-emptive power" that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." (internal quotation marks and citation omitted)). However, preempted state law claims seeking remedies outside the scope of ERISA's civil enforcement provision should be dismissed. *Singh v. Prudential Health Care Plan, Inc.*, 335 F.3d 278, 290 (4th Cir. 2003) ("[T]he district court must

consider only remedies authorized by § 502(a) and must reject all others."). Additionally, this Court has found that it is unnecessary to convert preempted state law claims to ERISA claims where the complaint already raises an analogous ERISA claim. *See Goff v. Frontier Commc'ns of Am., Inc.*, No. 2:16-CV-05689, 2017 WL 440731, at *5 (S.D. W. Va. Feb. 1, 2017).

"A state claim is an alternative enforcement mechanism for ERISA rights if the state claim could be brought as an enforcement action under § 502." *Darcangelo*, 292 F.3d at 191. Section 502 permits ERISA plan participants to "enforce [their] rights under the terms of the [ERISA] plan." 29 U.S.C. § 1132(a)(1)(B). This civil enforcement provision affords a plan participant or beneficiary the right (1) to recover benefits due under the terms of the plan, (2) to enforce rights under the terms of the plan, and (3) to clarify rights to future benefits. 29 U.S.C. § 1132(a)(1)(B).

Plaintiff raises a claim for under ERISA § 502 in Count I of the Complaint.[1] Plaintiff alleges that he was denied benefits due him under the terms of the Plan. Though Plaintiff incorporates by reference 285 paragraphs in addition to the allegations specifically directed at this claim, the relevant allegations can be summarized as follows: Plaintiff's benefits were cut off without consideration of his qualification for benefits under the Plan's Partial Disability definition; on review of this denial of benefits, Northwestern determined for the first time that Plaintiff did not qualify under the Partial Disability definition; Northwestern refused to consider the report of a treating nephrologist that the Plan required it to consider in its review; and Northwestern refused to review the determination that Plaintiff did not meet the Partial Disability definition.

The crux of this claim is that Northwestern failed to abide by ERISA's procedural requirements. In denying an ERISA claim, a plan must give "specific reasons" for denial of the

---

[1] Both Plaintiff and Northwestern acknowledge that the Plan is governed by ERISA. (ECF No. 1 ¶¶ 2-3, 6; ECF No. 8 at 3-5.)

claim. 29 U.S.C. § 1133(1). The plan participant must then be given an opportunity for "full and fair review" of the denial. 29 U.S.C. § 1133(2). The Fourth Circuit has held that a claimant is deprived of a full and fair review when a plan administrator upholds a denial of a claim on a basis not provided as a specific reason in the initial notice of denial. *See Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 236 (4th Cir. 2008). The Fourth Circuit also explained that the review process requires the administrator to allow beneficiaries to submit documents in support of their claims, and that those documents must be considered in the appeal. *Id.* at 235 (citing 29 C.F.R. § 2560.503–1(h)(1–2) (2008)). Though Plaintiff seeks various forms of relief on this claim,[2] the typical remedy for a procedural violation is remand to the plan administrator for a full and fair review. *See Weaver v. Phoenix Home Life Mut. Ins. Co.*, 990 F.2d 154, 159 (4th Cir. 1993) ("Normally, where the plan administrator has failed to comply with ERISA's procedural guidelines and the plaintiff/participant has preserved his objection to the plan administrator's noncompliance, the proper course of action for the court is remand to the plan administrator.")

Northwestern seeks dismissal of Counts II-VIII, arguing both that these counts are preempted by ERISA and each of them fails to state a claim.[3] Northwestern also seeks dismissal

---

[2] While in his prayer for relief Plaintiff seeks several forms of permissible relief, including the reinstatement of his benefits under the Plan, he also specifically asks for damages in Count I, which are prohibited under ERISA. *See Prince v. Sears Holdings Corp.*, 848 F.3d 173, 178 (4th Cir. 2017) ("ERISA does not permit recovery of money damages.").

[3] As noted above, the typical remedy when a state court claim is completely preempted by ERISA is to convert it to an ERISA claim. However, as discussed, dismissal is appropriate where such a claim is duplicative of a claim already raised under ERISA or where such a claim seeks relief unavailable under ERISA. In this case, with the exceptions of Counts I and VIII, the Complaint does not list the relief sought for specific claims, but rather lists the relief sought generally in a prayer for relief. Accordingly, it is unclear what form of relief each of Plaintiff's state law claims is seeking. However, given that all of the enumerated forms of relief Plaintiff requests in his prayer for relief, except for the damages specifically related to his WVCCPA claim—benefits due under the Plan, a declaration of Plaintiff's rights and benefits, pre-judgment interest, and attorney's fees and costs—can be interpreted to relate to his explicit ERISA claim in Count I, it appears that it would be superfluous to convert any of Plaintiff's preempted state law claims into ERISA claims. *See Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1030 (4th Cir. 1993) (noting that awards of pre-judgment interest and attorney's fees are at the discretion of the district court in ERISA actions).

of the entire Complaint on the grounds that its length violates Rule 8 of the Federal Rules of Civil Procedure's requirement that statements of a claim be "short and plain." Fed. R. Civ. P. 8(a)(2). As an initial matter, Plaintiff does not seem to contest that Counts II-VII are preempted, acknowledging in his Response that those claims are pled "alternatively to the violation of ERISA." (ECF No. 9 at 1.) While this may be sufficient to find that Counts II-VII are preempted, the Court deems it appropriate to examine the claims individually.

A. *Common Law Bad Faith*

Count II raises a claim of common law first party bad faith. "A first-party bad faith action is one wherein the insured sues his/her own insurer for failing to use good faith in settling a claim filed by the insured." Syl. Pt. 2, *Loudin v. Nat'l Liab. & Fire Ins. Co.*, 716 S.E.2d 696, 697 (W. Va. 2011). West Virginia law recognizes both a common law and a statutory cause of action for first party bad faith. *See id.* at 700 (citations omitted). This Court has recognized that ERISA preempts common law bad faith claim where those claims relate to a covered benefit plan. *See Int'l Union v. Mystic, LLC*, No. 5:16-CV-02030, 2016 WL 4596353, at *8 (S.D. W. Va. Sept. 2, 2016) (citing *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 378 (4th Cir. 2001)); *Summer v. Carelink Health Plans, Inc.*, 461 F. Supp. 2d 482, 486 (S.D. W. Va. 2006) (finding that a common law bad faith claim was "challenging the administration of an employee welfare plan" and thus was completely preempted as "an alternate enforcement mechanism[]").

While the Complaint does not allege specific behavior with respect to this claim, its general references to Northwestern's behavior suggest that this claim is based on the handling of Plaintiff's claim. Thus, to the extent that Count II states a claim, it is preempted by ERISA. Accordingly, the Court **GRANTS** the motion insofar as it seeks dismissal of Count II.

*B. Reasonable Expectations*

Count III purports to raise a claim for breach of the doctrine of reasonable expectations. Northwestern argues this count does not raise a stand-alone cause of action. Indeed, the Supreme Court of Appeals of West Virginia has clarified "that the doctrine of reasonable expectations is not a stand-alone cause of action but rather a rule of construction applicable to insurance contracts." *State ex rel. Erie Ins. Prop. & Cas. Co. v. Beane*, No. 15-0968, 2016 WL 3392560, at *2 n.2 (W. Va. June 13, 2016) (citing *Jenkins v. State Farm Mut. Auto. Ins. Co.*, 632 S.E.2d 346, 352 (W. Va. 2006)). Accordingly, the Court **GRANTS** the motion insofar as it seeks dismissal of Count III.

*C. Estoppel and Waiver*

Counts IV and V purport to raise claims for estoppel and waiver, respectively. Northwestern argues that neither of these are stand-alone causes of action, and to the extent they apply as principles, they are preempted by ERISA. Northwestern is correct that state law principles of waiver and estoppel cannot be applied to plans covered by ERISA. *See White v. Provident Life & Acc. Ins. Co.*, 114 F.3d 26, 29 (4th Cir. 1997) (citing *Holland v. Burlington Industries*, 772 F.2d 1140, 1147 (4th Cir. 1985)) (recognizing that "state law waiver and estoppel claims [are] preempted by ERISA"). Further, the Fourth Circuit has held that "federal common law under ERISA . . . does not incorporate the principles of waiver and estoppel." *Id.* Accordingly, to the extent that Plaintiff requests that the Court apply the concepts of estoppel and waiver to the Plan, he seeks application of principles preempted by ERISA.

However, a review of Plaintiff's allegations relevant to these counts shows that they both relate to the procedural issue alleged in Count I: Northwestern denied Plaintiff's initial benefits claim based on the Own Occupation language without consideration of the Partial Disability

8

language, considered the Partial Disability language for the first time in denying Plaintiff's appeal, then refused to review that decision, despite that it was the first instance in which that language had been considered. Effectively, both counts argue that Northwestern did not follow the proper ERISA claim review procedure as set out in § 1133 and the corresponding regulations. However, because Plaintiff has already raised this issue in Count I, it would be duplicative to convert these Counts into an ERISA claim. Accordingly, the Court **GRANTS** the motion insofar as it seeks dismissal of Counts IV and V.

*D. UTPA Claims*

Counts VI and VII of the Complaint raise claims under the WVUTPA.[4] The WVUTPA regulates trade practices in the insurance industry by defining and outlawing a number of unfair or deceptive business practices. *See* W. Va. Code § 33-11-1. Count VI alleges that Northwestern violated section 33-11-4(9), which prohibits a number of claim settlement practices, though the Complaint is unspecific about which of the enumerated practices Northwestern engaged in. Rather, it alleges Northwestern's behavior as detailed elsewhere in the Complaint violated the duties of the UTPA and corresponding regulations, and that Northwestern engaged in a pattern or practice of unfairly denying claims.

In assessing whether Mississippi common law claims based on the improper processing of claims were preempted by ERISA, the United States Supreme Court noted that "the civil enforcement scheme of ERISA makes clear its intention that all suits brought by beneficiaries or

---

[4] Though Count VII purports to raise a claim under the "Uniform Trade Practices Act," rather than the "Unfair Trade Practices Act," it appears that it was intended to raise a claim under the latter. Regardless, because Count VII consists of only two allegations, one of which concludes that Northwestern's conduct violated the UTPA while the other concludes Plaintiff was harmed by the violation, it fails to state a cognizable claim. (ECF No. 1 ¶¶ 325-26.) Accordingly, the Court **GRANTS** the motion insofar as it seeks dismissal of Count VII.

participants asserting improper processing of claims under ERISA-regulated plans be treated as federal questions governed by § 502(a)." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987). Courts interpreting the WVUTPA have similarly found its prohibitions related to claims processing to be preempted by ERISA as alternative enforcement mechanisms. *See, e.g.*, *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 420-21 (4th Cir. 1993) (affirming a finding that claims under section 33-11-4(9) were preempted by ERISA); *Goff*, 2017 WL 440731, at *4 (finding that WVUTPA claims related to claims handling were preempted by ERISA). While the Complaint is not entirely specific in its allegations under the WVUTPA, it is clear that they relate to Northwestern's claims processing. Accordingly, Count VI is preempted by ERISA. The Court **GRANTS** the motion insofar as it seeks dismissal of Count VI.

E. *WVCCPA Illegal Debt Collection*

Count VIII purports to raise a claim under the West Virginia Consumer Credit and Protection Act. Though the relevant allegations do not cite to a specific subsection of the act, the allegation that Northwestern engaged in "unlawful and deceptive debt collection practices" strongly suggests that Plaintiff intended to raise a claim under West Virginia Code section 46A-2-127, which prohibits a "debt collector" from using "any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims." W. Va. Code § 46A-2-127.

1. ERISA Preemption

Northwestern argues that this claim is preempted because it is based on the calculation of Plaintiff's monthly benefits under the Plan. It asserts that this claim relates to the Plan because it cannot be adjudicated without reference to the Plan. Plaintiff argues that this claim is not preempted because it relates only to Northwestern's alleged debt collection activities, regardless

of the propriety of the benefits payments. The parties have not cited to any cases interpreting section 46A-2-127 in the context of ERISA preemption, and the Court is not aware of any. However, in a related context, the Fourth Circuit has explained that "ERISA preempts state common law claims of fraudulent or negligent misrepresentation when the false representations concern the existence or extent of benefits under an employee benefit plan." *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 378 (4th Cir. 2001) (citing *Hall v. Blue Cross/Blue Shield of Ala.*, 134 F.3d 1063, 1064-66 (11th Cir. 1998); *see Conner v. Elkem Metals Co.*, No. CIV A 5:06-CV-00217, 2008 WL 5122197, at *3 (S.D. W. Va. Dec. 5, 2008) (finding a misrepresentation claim preempted by ERISA where the alleged misrepresentations concerned the amount of benefits available because the claim was "premised on" the existence of an ERISA plan).

The Fourth Circuit has counseled that courts deciding preemption issues should look at the relevant factual allegations, rather than just the legal labels attached to a claim. *See id.* at 379 (citing *Boston Children's Heart Found., Inc. v. Nadal-Ginard*, 73 F.3d 429, 439-40 (1st Cir. 1996)). Though Plaintiff argues that this claim relates solely to Northwestern's debt collection practices, the relevant allegations make clear that it hinges entirely on the propriety of benefits payments.[5] Plaintiff alleges generally that Northwestern's debt collection practices were "unlawful and deceptive," and that it made "numerous attempts to collect upon a debt that the Plaintiff does not owe," but the only relevant factual allegations that suggest any sort of misrepresentation—that Northwestern "wrongfully denied benefits to the Plaintiff," "failed to

---

[5] While it is conceivable that a plaintiff could state a claim against an ERISA plan administrator under section 46A-2-127 if the alleged misrepresentations were in the aid of collections of overpayments, that is not what has been alleged in this case.

11

follow the policy language to determine whether an overpayment occurred," and "wrongfully alleged the Plaintiff was overpaid while collecting benefits"—relate to its interpretation of the Plan and calculation of benefits. (ECF No. 1 ¶¶ 327-31.) To the extent these allegations could state a claim at all, the factual essence of this claim is that Northwestern misrepresented the benefits Plaintiff was entitled to under the Plan, and attempted to recoup money from Plaintiff as a result. Accordingly, this claim is related to an employee benefit plan, and is thus is preempted by ERISA and subject to dismissal.[6]

2. Failure to State a Claim

Northwestern also seeks to dismiss Count VIII on the grounds that Plaintiff has failed to state a claim. As discussed above, section 46A-2-127 provides that "[n]o debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims . . . ." W. Va. Code § 46A-2-127. Northwestern argues that Plaintiff has not stated a claim under the WVCCPA at all, because Plaintiff is not a "consumer" as the term is defined in the act. Northwestern cites to the WVCCPA's general definition of consumer, which provides that a consumer is "a natural person who incurs debt pursuant to a consumer credit sale or a consumer loan, or debt or other obligations pursuant to a consumer lease." W. Va. Code § 46A-1-102. It asserts that because the Plan is not a consumer credit sale, loan, or lease, Plaintiff is not a consumer and thus cannot state a claim under the act. However, Northwestern fails to consider that section 46A-2-122(a) provides a definition of a consumer as "any natural person obligated or allegedly obligated to pay any debt" that applies to claims made under section 46A-2-127, among

---

[6] To the extent this claim is also completely preempted by ERISA, it would be dismissed rather than converted to an ERISA claim because it seeks damages, a remedy unavailable under ERISA.

12

others. W. Va. Code § 46A-2-122(a) (1996). Accordingly, Northwestern's reliance on the WVCCPA's general definition of consumer is misplaced.

However, the Plaintiff must have alleged that the defendant is a "debt collector" in order to state a misrepresentation claim under section 46A-2-127. As relevant to that section, a debt collector is "any person or organization engaging directly or indirectly in debt collection," debt collection includes "any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due by a consumer," and a claim is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or service which is the subject of the transaction is primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment." W. Va. Code § 46A-2-122(b)-(d) (1996). In *Hinkle*, this Court determined that a deferral of payment is necessary to find a "claim" under the WVCCPA:

> While the West Virginia Supreme Court of Appeals has not addressed whether insurance contracts with a single upfront premium payment involve the collection of a "claim" under the WVCCPA, it has acknowledged that the definition of "claim" in the statute is "essentially identical" to the definition of "debt" in the analogous federal Fair Debt Collection Practices Act ["FDCPA"] . . . There can be no "debt" under the FDCPA without a deferral of payment. The court sees no reason that a "claim" under the WVCCPA should not also require a deferral of payment. Consequently, [the defendant] has not been shown to have engaged in debt collection.

*Hinkle v. Matthews*, No. 2:15-13856, 2016 WL 3945734, at *3 (S.D. W. Va. July 19, 2016) (citations omitted).

Plaintiff alleges here that Northwestern miscalculated his benefits and, based on purported overpayments, attempted to recoup money from him. Nowhere does Plaintiff claim that there was a deferral of payment. Without a deferral of payment, Plaintiff cannot allege a collectable "claim"

13

as defined under the WVCCPA. *See Hinkle*, 2016 WL 3945734, at *3 (citing W. Va. Code § 46A-2-122(b)). In turn, because Plaintiff has not alleged a "claim," he has not alleged that Northwestern was a debt collector, and has not stated a misrepresentation claim under section 46A-2-127.

Accordingly, because Plaintiff's WVCCPA misrepresentation claim under 46A-2-127 is preempted by ERISA, and because it fails to state a claim, the Court **GRANTS** the motion insofar as it seeks dismissal of Count VIII.

*F. Rule 8 Dismissal*

Northwestern also seeks dismissal of the entire Complaint on the grounds that it violates Rule 8 of the Federal Rules of Civil Procedure's requirement that statements of a claim be "short and plain." Fed. R. Civ. P. 8(a)(2). Northwestern argues that at sixty-eight pages and 333 paragraphs, the Complaint is "unwieldy, unintelligible, and confusing" and thus subject to dismissal. (ECF No. 8 at 14.) Plaintiff does not dispute that the Complaint is long, but challenges the assertion that it is unintelligible; he argues that the level of factual detail sets out his claims more specifically than is required, and that there is no authority for dismissing a complaint for being too specific. (ECF No. 9 at 3-4.)

District courts have some discretion in determining whether to dismiss a complaint for violations of Rule 8(a). *See North Carolina v. McGuirt*, 114 F. App'x 555, 558 (4th Cir. 2004) (citing *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000)). The Fourth Circuit has provided factors courts should consider in exercising this discretion, "including the length and complexity of the complaint, whether the complaint was clear enough to enable the defendant to know how to defend himself, and whether the plaintiff was represented by counsel." *Id.* (citations omitted).

14

While courts have recognized that "[t]he dismissal of a complaint on the ground that it is unintelligible is unexceptionable," they have also cautioned that where a "complaint adequately performs the notice function prescribed for complaints by the civil rules, the presence of extraneous matter does not warrant dismissal." *Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 821 (7th Cir. 2001).

As noted above, the Complaint in this case is sixty-eight pages and 333 paragraphs. The Fourth Circuit has recognized that complaints dismissed under Rule 8(a) are usually longer and more complex. *See Sewraz v. Long*, 407 F. App'x 718, 719 (4th Cir. 2011) (collecting cases affirming dismissals of complaints of 155 pages, 400 paragraphs; 240 pages, 600 paragraphs; 43 pages, 358 paragraphs; and 98 pages, 144 paragraphs); *Vicom, Inc. v. Harbridge Merch. Svcs.*, 20 F.3d 771, 775–76 (7th Cir. 1994) (observing that dismissal under Rule 8 of 385–paragraph, 119–page "less-than-coherent" complaint would have been appropriate); *but see Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1127 (9th Cir. 2008) (finding abuse of discretion when district court dismissed 81–page complaint that included "excessively detailed factual allegations" that were nonetheless "coherent, well-organized, and stated legally viable claims"). Additionally, the Complaint, though longer than it needs to be, is not unintelligible. It is quite possible to decipher the ERISA violations Plaintiff alleges and ignore the repetitious material.

Regarding Northwestern's ability to understand the Complaint and defend itself, it does not appear that it had any difficulty understanding that the crux of the Complaint is that Plaintiff believes his ERISA benefits were improperly denied and that he is seeking to have them restored. Northwestern is correct that the Complaint contains excessive "factual minutiae," but given that both Northwestern and the Court seem to understand the only cause of action that survives this

15

Memorandum Opinion and Order, the unnecessary detail falls in the category of that which should be ignored, rather than that which warrants dismissal. It is true that Plaintiff pled Count I generally against "the Defendants," but given that the relevant factual allegations make clear that it intends to state this claim against Northwestern, coupled with Northwestern's apparent understanding that it must defend against this claim, this does not appear to have created any serious confusion as to whom the ERISA claim is against.

While Plaintiff is not represented by counsel, the Court need not attribute as much weight to this factor, as Plaintiff is an experienced lawyer. However, given that the other factors do not weigh in favor of dismissal, it is unnecessary to decide what degree of liberality to accord to Plaintiff's pleadings given his technical *pro se* status.

Given that the Complaint, though far from a model of compliance with the letter and spirit of Rule 8(a), states an ERISA claim against Northwestern in a comprehensible manner, the Court finds that dismissal under Rule 8 is inappropriate. Accordingly, the Court **DENIES** the motion insofar as it seeks dismissal of the Complaint on these grounds.

## IV. CONCLUSION

For the foregoing reasons, Defendant Northwestern's Motion to Dismiss (ECF No. 7) is **GRANTED** insofar as it requests dismissal of Counts II-VI and VIII on ERISA preemption grounds and Counts VII-VIII for failure to state a claim, and **DENIED** insofar as it requests dismissal of the entire Complaint on Rule 8 grounds.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: August 16, 2017

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE