IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

VAUGHN T. SIZEMORE,

        Plaintiff,

v.                          CIVIL ACTION NO. 2:17-cv-00789

NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Before this Court are cross-motions for summary judgment filed by Plaintiff Vaughn T. Sizemore ("Plaintiff"), (ECF No. 19), and Defendant Northwestern Mutual Life Insurance Company ("Defendant"), (ECF No. 21). For the reasons explained more fully herein, Plaintiff's motion, (ECF No. 19), is **DENIED**. Defendant's motion, (ECF No. 21), is **GRANTED**.

                  *I.*       *BACKGROUND*

Plaintiff brings this action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* (*See* ECF No. 1.) He alleges that Defendant improperly discontinued his disability benefits, which he received under a group insurance plan he obtained through his former employer. (*See id.*) Plaintiff is an attorney who, at the time he filed his claim for disability benefits on February 17, 2012, was employed at a law firm that sponsors the plan at issue in this case. (*See* ECF No. 20 at 5; ECF No. 22 at 5.) Plaintiff filed a claim for disability benefits after his billable hours—and in turn, his overall compensation—decreased significantly.

(ECF No. 20 at 6, 17–18; ECF No. 22 at 8.) His claim was approved on April 23, 2012, and he continued to receive benefits until approximately June 22, 2015. (ECF No. 20 at 6, 9; ECF No. 22 at 9, 12.) In the interim, Plaintiff resigned from the law firm and on January 20, 2015, began full-time employment as an attorney in state government. (ECF No. 22 at 11.)

Plaintiff submitted an internal appeal of Defendant's decision to cease his disability benefits on July 1, 2015. (ECF No. 20 at 9–10; ECF No. 22 at 12.) Defendant upheld its decision on December 15, 2015, after informing him on October 13, 2015, that he did not qualify for benefits under any of the plan's definitions of disability. (ECF No. 20 at 15–16; ECF No. 22 at 14–15, 16.) On January 21, 2016, Plaintiff requested a review of the December 15, 2015 decision, but Defendant denied his request. (ECF No. 20 at 18–19; ECF No. 22 at 17.) Plaintiff then brought suit against Defendant on January 23, 2017. (ECF No. 1.)

Plaintiff filed his motion for summary judgment on January 14, 2019. (ECF No. 19.) Defendant filed a timely response, (ECF No. 24), and Plaintiff filed a timely reply, (ECF No. 25). Defendant filed its motion for summary judgment on January 14, 2019. (ECF No. 21.) Plaintiff filed a timely response, (ECF No. 23), and Defendant filed a timely reply, (ECF No. 26). As such, the motions for summary judgment are fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material when it 'might affect the outcome of the suit under the governing law.'" *Strothers v. City of Laurel*, 895 F.3d 317, 326 (4th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A genuine dispute arises when 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Id.* (quoting *Anderson*,

477 U.S. at 248). "Thus, at the summary judgment phase, the pertinent inquiry is whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (alteration and internal quotation marks omitted).

"The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial . . . by offering 'sufficient proof in the form of admissible evidence' . . . ." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). In ruling on a motion for summary judgment, this Court "view[s] the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party." *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 312 (4th Cir. 2013)).

### III. ANALYSIS

#### A. Applicable Standard of Review

As an initial matter, the parties disagree about the appropriate standard of review this Court should apply to Defendant's adverse benefit determination with respect to Plaintiff's claim for disability benefits under the plan. (*Compare* ECF No. 22 at 17–18, *with* ECF No. 25 at 6.) This Court's review "turns on whether the benefit plan at issue vests the administrator with discretionary authority." *Helton v. AT&T Inc.*, 709 F.3d 343, 351 (4th Cir. 2013) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Woods v. Prudential Ins. Co. of Am.*, 528 F.3d 320, 321–22 (4th Cir. 2008)). Specifically, this Court "reviews challenges . . . for denial of benefits 'under a *de novo* standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Plotnick v. Comput. Scis. Corp. Deferred Compensation Plan for Key Execs.*, 875 F.3d 160, 165 (4th Cir. 2017) (quoting *Firestone*, 489 U.S. at 115). If the plan vests such discretionary authority with the

3

administrator, this Court "evaluates the plan administrator's decision for abuse of discretion." *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 629–30 (4th Cir. 2010) (citing *Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353, 359 (4th Cir. 2008); *Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir. 1997)). "[N]o specific words or phrases are required to confer discretion, but . . . a grant of discretionary authority must be clear." *Cosey v. Prudential Ins. Co. of Am.*, 735 F.3d 161, 165 (4th Cir. 2013).

Defendant argues that the plan at issue grants it "broad discretionary powers." (ECF No. 22 at 17–18.) Indeed, the plan provides that Defendant "has full and exclusive authority to control and manage the [plan], to administer claims, and to interpret the [plan] and resolve all questions arising in the administration, interpretation, and application of the [plan]." (ECF No. 18-1 at 33.) This Court has previously held identical language sufficient to accord discretionary authority with the plan administrator and to warrant abuse-of-discretion review. *Caldwell v. Standard Ins. Co.*, No. 2:14-cv-25242, 2015 WL 5031485, at *2–*3 (S.D.W. Va. Aug. 25, 2015) (Copenhaver, J.) (citing *Hankins v. Standard Ins. Co.*, 677 F.3d 830, 835 (8th Cir. 2012); *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 122 (3d Cir. 2012); *Black v. Long Term Disability Ins.*, 582 F.3d 738, 744 (7th Cir. 2009)); *see Dutkewych v. Standard Ins. Co.*, 781 F.3d 623, 633 (1st Cir. 2015); *McKeehan v. Cigna Life Ins. Co.*, 344 F.3d 789, 792 (8th Cir. 2003); *McCready v. Standard Ins. Co.*, 417 F. Supp. 2d 684, 696 (D. Md. 2006). The plan also gives Defendant "[t]he right to determine . . . [claimants'] eligibility for insurance" and "entitlement to benefits." (ECF No. 18-1 at 99.)

However, Plaintiff contends that Defendant's failure to consider his appeal of the adverse benefit determination made in December 2015 entitles him to *de novo* review. (ECF No. 25 at 6. *But see* ECF No. 20 at 19 ("[T]he standard of review is abuse of discretion.").) Whether Defendant complied with its obligation to award Plaintiff "a full and fair review" of the denial of

4

his claim for benefits, 29 U.S.C. § 1133(2), has no effect on the applicable standard of review because Defendant "must comply with these procedural guidelines" "[u]nder either standard of review." *Hall v. Metro. Life Ins. Co.*, 259 F. App'x 589, 593 (4th Cir. 2007). Accordingly, because the plan under which Plaintiff seeks benefits confers discretionary authority on Defendant to interpret the plan and determine eligibility for benefits, this Court applies the deferential abuse-of-discretion standard of review.

In doing so, this Court does not "review the merits of the administrator's decision, but rather decide[s] only the contractual questions of whether the administrator exceeded its power or abused its discretion because only those inquiries are relevant to whether the administrator's decision breached the contractual provision." *Griffin v. Hartford Life & Accident Ins. Co.*, 898 F.3d 371, 378 (4th Cir. 2018) (quoting *Haley v. Paul Revere Life Ins. Co.*, 77 F.3d 84, 88 (4th Cir. 1996)). "Under the abuse-of-discretion standard, [this Court] will not disturb a plan administrator's decision if the decision is reasonable, even if [this Court] would have come to a contrary conclusion independently." *Williams*, 609 F.3d at 630. "To be held reasonable, the administrator's decision must result from a 'deliberate, principled reasoning process' and be supported by substantial evidence." *Id.* In assessing reasonableness, this Court is guided by "eight nonexclusive factors": "(1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have." *Id.* (quoting *Booth v.*

5

*Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342–43 (4th Cir. 2000)); *see Griffin*, 898 F.3d at 381.

### B. Plaintiff's Eligibility for Benefits

The principal issue for this Court to decide is whether Defendant reasonably concluded that Plaintiff became ineligible for benefits under the terms of the plan upon returning to work full-time in state government. By letter dated June 22, 2015, Defendant informed Plaintiff that it did "not find support for any ongoing limitations and restrictions that would preclude [Plaintiff] from returning to full time work in [his] Own Occupation as an attorney." (ECF No. 18-5 at 270.) In that letter, Defendant briefly detailed the available medical records from his treating physicians and summarized the findings of a physician consultant who reviewed those records. (*Id.* at 271–72.) Based on this information, Defendant concluded that Plaintiff's "conditions have improved and stabilized to a level which would allow [him] to return to work in a sedentary level occupation working an eight hour[] day with a reasonably sustainable schedule." (*Id.* at 274.) Defendant therefore determined that Plaintiff no longer qualified for benefits. (*Id.*)

Plaintiff appealed Defendant's decision on July 1, 2015, asserting that he satisfied the plan's definition of partial disability because he continued to earn less than 80% of his predisability earnings following his change in employment. (ECF No. 18-6 at 9–11.) Plaintiff also took issue with the physician consultant's review of his medical records and argued that his decreased kidney function and related issues made it difficult for him to concentrate and thus to perform "the Material Duties of an Attorney." (*Id.* at 6.)

Defendant upheld its earlier decision by letter dated December 15, 2015, noting that Plaintiff previously received benefits because he satisfied the plan's "own occupation" definition of disability, not the "partial disability" definition. (*Id.* at 296–97.) In response to Plaintiff's

argument that he qualified under the partial disability definition, Defendant explained that while receiving benefits, Plaintiff's reduction in income was caused by a medical inability to work a certain number of hours, but the reduction in income after his job change was not caused by any medical condition. (*See id.* at 297–98.) Further, Defendant summarized the notes from Plaintiff's most recent appointments with his treating physicians, as well as a second physician consultant's review of his medical records, and emphasized that none described "work activity limitations or restrictions" that would prohibit Plaintiff from full-time work. (*Id.* at 299–300.)

Plaintiff also appealed Defendant's December 15, 2015 decision, arguing that he was entitled to a second review because Defendant concluded for the first time that Plaintiff did not qualify for partial disability benefits. (ECF No. 18-7 at 8.) By letter dated February 12, 2016, Defendant declined to conduct an additional review because the previous review "exhausted the administrative review procedures available . . . under the terms of the [plan]" and because Plaintiff's concerns had "already been reviewed and addressed." (*Id.* at 56.)

*1. Rejection of Appeal of December 15, 2015 Decision*

Plaintiff asserts that Defendant's refusal to reexamine its December 15, 2015 letter unlawfully deprived him of a "full and fair review" of his claims. (ECF No. 25 at 6.) "ERISA requires that plans provide claimants with a 'reasonable opportunity . . . for a full and fair review by the appropriate named fiduciary of the decision denying the claim.'" *Harrison v. Wells Fargo Bank, N.A.*, 773 F.3d 15, 21 (4th Cir. 2014) (quoting 29 U.S.C. § 1133(2)). This requirement is intended "to protect a plan participant from arbitrary or unprincipled decision-making." *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 235 (4th Cir. 2008) (quoting *Weaver v. Phoenix Home Life Mut. Ins. Co.*, 990 F.2d 154, 157 (4th Cir. 1993)). However, nothing in the statutory or plan language mandates multiple reviews or appeals in order to satisfy the "full and fair"

7

requirement. The plan language provides for a single review of the denial of a claim. (*See* ECF No. 18-1 at 32–33; ECF No. 18-6 at 301.) ERISA's regulations similarly require "a reasonable opportunity to appeal an adverse benefit determination," 29 C.F.R. § 2560.503–1(h)(1), a term the regulations define in part as "[a] denial, reduction, or termination of . . . a benefit," *id.* § 2560.503–1(m)(4)(i). Thus, both the plan language and the regulations anticipate a single review of the ultimate decision to terminate or deny benefits. Neither entitles Plaintiff to additional review here.[1]

## 2. *Termination of Benefits*

Plaintiff's remaining argument is that Defendant unreasonably discontinued his disability benefits after determining that he was no longer disabled under the terms of the plan. (*See* ECF No. 20.) Plaintiff contends that in terminating his benefits, Defendant considered only whether he qualified for benefits under the "own occupation" definition of disability. (*Id.* at 7.) He asserts that he continues to qualify for benefits under the "partial disability" definition. (*Id.* at 20.)

The plan provides that a beneficiary is "Disabled if [he] meet[s]" any of the plan's three definitions of disability. (ECF No. 18-1 at 22–23.) As relevant here, a beneficiary satisfies the "own occupation" definition "if, as a result of Sickness[ or] Injury . . . [he is] unable to perform with reasonable continuity the Material Duties of [his] Own Occupation." (*Id.* at 23.) He satisfies the "partial disability" definition "if [he is] working in [his] Own Occupation but, as a result of Sickness[ or] Injury . . . [he is] unable to earn more than the Own Occupation Income

---

[1] This Court acknowledges that additional review may be required when the plan administrator's response to the claimant's appeal "did not address the subject matter of [the claimant's] administrative appeal but made a 'final decision' to deny benefits on a wholly new ground." *Gagliano*, 547 F.3d at 236. However, the December 15, 2015 letter's discussion of the "partial disability" definition of disability was a response to the arguments Plaintiff made in his appeal submission, not an entirely new basis for denying Plaintiff's claim. Defendant thus had no obligation to provide Plaintiff with a second appeal under the facts of *Gagliano*.

8

Level," which for the plan at issue is defined as "80% of [the claimant's] Indexed Predisability Earnings." (*Id.* at 16, 23.) Plaintiff initially applied for benefits under the "partial disability" definition, (ECF No. 18-3 at 208), but Defendant approved his claim based on the "own occupation" definition, (ECF No. 18-4 at 3, 6).

Defendant reasonably concluded that Plaintiff no longer qualified as disabled under the "own occupation" definition. It acted in accordance with its rights under the plan's terms to "investigate . . . claim[s] at any time" and "to determine . . . [claimants'] entitlement to benefits." (ECF No. 18-1 at 59, 67.) It obtained updated medical records from his treating physicians that indicated lingering fatigue and exhaustion but overall clinical improvement. (*See* ECF No. 18-5 at 271–72.) It also considered reports from a board-certified physician consultant and a vocational consultant to conclude that Plaintiff's medical conditions did not prohibit him from working as an attorney on a consistent, full-time basis. (*See id.* at 272–74.) Indeed, Plaintiff was working full-time as an attorney in state government when Defendant issued its decision. (*See* ECF No. 18-6 at 118.) He agrees that he does not qualify for benefits under the "own occupation" definition of disability. (*See* ECF No. 20 at 13 ("Plaintiff never claimed his medical conditions prevented him from working as an attorney . . . ."; ECF No. 23 at 3 ("Plaintiff never claimed to be disabled under the Own Occupation Definition of Disability.").)

Defendant likewise reasonably concluded that Plaintiff failed to satisfy the "partial disability" definition. Defendant explained that its previous determination that Plaintiff was disabled was based not on Plaintiff's inability "to perform particular, specific activities which had formed the basis of [his] income" but on his inability "to work the number of hours [he] had previously been capable of, which had caused [him] to have a reduction in income." (ECF No. 18-6 at 297.) Defendant further explained that when Plaintiff "changed from a position where [he

9

was] paid based on [his] specific production and guaranteed payments as a partner, to a full time salaried position," the resulting reduction in Plaintiff's income was not "correlated with [Plaintiff's] ability or inability to work in [his] Own Occupation with reasonable continuity." (*Id.*) In other words, Defendant was unable to conclude that the reduction in Plaintiff's earnings was caused by a medically documented impairment. (*See id.* at 298.) This outcome is consistent with the plan's definition of "partial disability," which requires that a claimant's reduction in income while "working in [his] Own Occupation" to be "a result of Sickness[ or] Injury." (ECF No. 18-1 at 23.) The plan clarifies, "Own Occupation is not limited to your specific job with your Employer or to your specific area of specialization, interest or expertise within the general occupation." (*Id.*) Defendant reasonably interpreted this language and applied it to Plaintiff in light of the available medical evidence.

Specifically, Defendant had before it a host of medical records from Plaintiff's treating physicians, the most recent of which indicated that Plaintiff suffered from lingering fatigue and exhaustion but saw clinical improvement and noted no functional limitations or restrictions. (*See* ECF No. 18-5 at 271; ECF No. 18-6 at 299.) Defendant also considered reports from two physician consultants, both of whom concluded after a review of Plaintiff's claim file that his diagnoses would not prevent him from engaging in consistent, full-time work as an attorney. (*See* ECF No. 18-5 at 272–73; ECF No. 18-6 at 300.) Defendant corresponded with Plaintiff throughout 2015 and offered him opportunities to provide additional information in support of his entitlement to benefits. (*See* ECF No. 18-6 at 297.) It conducted an in-person interview as part of the review process. (*See id.* at 117–33.) There is no indication in the record that Defendant accorded Plaintiff less than "a fair and thorough consideration of his claim." *Griffin*, 898 F.3d at 381. Nothing more is required. *See Williams*, 609 F.3d at 630 ("To be held reasonable, the

administrator's decision must result from a 'deliberate, principled reasoning process' and be supported by substantial evidence.").

"Where an ERISA administrator rejects a claim to benefits on the strength of substantial evidence, careful and coherent reasoning, faithful adherence to the letter of ERISA and the language in the plan, and a fair and searching process, there can be no abuse of discretion . . . ." *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 325–26 (4th Cir. 2008). In light of that standard, this Court cannot conclude that Defendant abused its discretion in terminating Plaintiff's disability benefits because Plaintiff no longer qualified as disabled.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment, (ECF No. 19), is **DENIED**. Defendant's motion for summary judgment, (ECF No. 21), is **GRANTED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: June 26, 2019

_____
THOMAS E. JOHNSTON, CHIEF JUDGE